

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00092-CV

**IN THE INTEREST OF A.E.**, Jr., et al., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-00722
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 2, 2014

AFFIRMED

Appellant Tommi Jo appeals the trial court's order terminating her parental rights to A.E., Jr., M.J.E., M.E., and M.E., minor children.  Gerald, father of M.E. and M.E., minor children, also appeals the trial court's order terminating his parental rights to M.E. and M.E.  On appeal, Tommi Jo and Gerald challenge the legal and factual sufficiency of the evidence to support the trial court's determination that termination is in the best interests of the children and the appointment of the Texas Department of Family and Protective Services as the children's sole managing conservator. Because the evidence was sufficient to support the trial court's finding that the termination was in the children's best interests, we affirm the trial court's order.

**FACTUAL BACKGROUND**

On March 26, 2013, the Texas Department of Family and Protective Services (the Department) sought emergency custody of Tommi Jo's minor children, varying in age from seven-years to six-months, based on abuse and neglect. Tommi Jo was incarcerated on probation violations.

A.E., Jr. and M.J.E. were fathered by Andrew,[1] who was incarcerated during the entire pendency of the proceedings; the younger two children, M.E. and M.E., were fathered by Gerald. The caseworker testified that Gerald denied paternity at the time of the removal. After several settings, the Department filed service plans in May of 2013. In September of 2013, Gerald did not appear for the permanency hearing.

On October 17, 2013, Tommi Jo was released from the Bexar County jail and moved to Del Rio, Texas to live with Gerald. On November 30, 2013, Gerald was arrested for family violence against Tommi Jo. On January 14, 2014, the trial court declared Gerald as the father of M.E. and M.E.

The case was called for a termination hearing on January 27, 2014. The trial court heard from several witnesses.

**A.    Wendy Pierce**

Department caseworker, Wendy Pierce, testified that she originally removed the children from Tommi Jo's residence over concerns of physical neglect, neglectful supervision, and domestic violence in the home. Additionally, Pierce testified the children's medical needs were not being met, the children were not receiving adequate food and clothing, and an adult-sibling admitted to using marijuana in front of the children. She testified that she contacted Gerald who

---

[1] Andrew has not filed an appeal regarding the termination of his parental rights and his termination is not addressed in this opinion.

informed her, "He did not want the children. He was not the father to the children and could not provide care for the children." Pierce also testified that neither Tommi Jo nor Gerald notified her of Gerald's arrest stemming from an alleged domestic violence assault against Tommi Jo on November 30, 2013. Pierce testified that neither Tommi Jo nor Gerald could provide a safe and stable home for the children.

**B.      Christina Ramirez**

Department caseworker, Christina Ramirez, testified that Andrew, the father of A.E., Jr. and M.J.E. was incarcerated due to an indecency with a child conviction. Additionally, Ramirez testified that Gerald continued to engage in domestic violence and that he was arrested in Del Rio on November 30, 2013, after an argument with Tommi Jo.

Ramirez also testified that Tommi Jo had not provided proof of her completion of any requirement of her service plan, had not visited with her children, and had not provided any proof of employment. Additionally, when Tommi Jo was released from jail on October 17, 2013, she did not contact Ramirez for almost a month and Tommi Jo further elected to move into Gerald's residence in Del Rio. This decision caused great problems with setting up services for Tommi Jo, a decision Ramirez discussed with Tommi Jo. Although Ramirez tried for two weeks to provide a visitation between Tommi Jo and her children, the visitation never occurred.

Ramirez further testified that although the children were currently in a foster home, and a permanent placement was not yet available, she did not believe either parent could provide a safe, stable environment or protect the children. Finally, Ramirez testified termination of Tommi Jo's and Gerald's parental rights was in the children's best interests.

**C.      Tommi Jo**

Tommi Jo testified that she was incarcerated for a probation violation stemming from a conviction for injury to a child. Tommi Jo explained that she was arrested on an outstanding

warrant; Gerald notified the police because he was upset with her. After being released in October of 2013, Tommi Jo testified that she moved to Del Rio to live with Gerald and that neither she nor Gerald had a driver's license or a vehicle to travel to San Antonio to see the children. Additionally, Tommi Jo testified that she was under the belief that she could not leave Del Rio based on her probation status.

Tommi Jo acknowledged that although she had spoken to the older children, she had not seen any of the children since they were removed in March of 2013. She also testified that she completed several courses while she was incarcerated, but was unable to provide a copy of the certificate she claimed to have provided the Department. Additionally, her service plan required her to be employed and, although she had not provided the caseworker with pay stubs, she began working for the Dollar Store in December of 2013.

As to Gerald, Tommi Jo conceded that he had not attempted to contact the children or the Department during the pendency of the suit.

**D. Gerald**

Gerald testified that he had four driving while intoxicated convictions in Bexar County, Texas and a protective order filed against him from a previous relationship that he subsequently violated. During the pendency of the suit, Gerald lived in Del Rio. Gerald testified that he tried to contact the caseworker at least once a month, and, when he finally had Wendy on the phone, she hung up on him. Gerald denied telling the caseworker that he could not care for the children.

**E. Trial Court Action**

At the end of the termination hearing, the trial court terminated Tommi Jo's maternal rights to A.E., Jr., M.J.E., M.E., and M.E. and terminated Gerald's paternal rights to M.E. and M.E. Both Tommi Jo and Gerald appeal the trial court's termination order.

## STANDARD OF REVIEW

Parental rights may be terminated only upon clear and convincing evidence the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, **and** that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014) (emphasis added); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re A.V.*, 113 S.W.3d 355, 358 (Tex. 2003). "Clear and convincing evidence is 'proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re J.O.A.*, 283 S.W.3d at 344 (quoting TEX. FAM. CODE ANN. § 101.007).

In evaluating the evidence for legal sufficiency in parental termination cases, we examine "'all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We must also "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266.

When the evidence is challenged for factual sufficiency, we also review the disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266. We afford due deference to the fact-finder's findings and will not supplant the reasonable fact-finder's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

Because the parties only contest the trial court's determination of the best interests of the children, we need not address the statutory requirements under section 161.001(1). TEX. FAM.

CODE ANN. § 161.001(1). We, therefore, look at the sufficiency of the evidence to support the trial court's determination that termination is in the best interest of the children. *Id*. § 161.001(2).

## BEST INTERESTS OF THE CHILDREN

There is a strong presumption that the best interest of the child is served by keeping the child with the natural parent. *In re U.P*., 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). It is not, however, the only factor. An appellate court considers several factors "when determining whether termination of parental rights is in the best interest of the child." *In re R.R*., 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These include the statutory factors in section 263.307 of the Family Code, *id*. (citing TEX. FAM. CODE ANN. § 263.307), as well as the common law factors described by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (identifying a non-exhaustive list of factors).

### A.     Termination as to Tommi Jo

Tommi Jo's court-appointed attorney filed a brief containing a professional evaluation of the record and demonstrating that there are no arguable grounds to be advanced. Counsel concludes that the appeal is without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967*). See In re R.R*., No. 04–03–00096–CV, 2003 WL 21157944, at *4 (Tex. App.—San Antonio May 21, 2003, no pet.) (mem. op.) (applying *Anders* procedure in appeal from termination of parental rights); *see also In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (same).

Counsel provided appellant with a copy of the brief. Tommi Jo was informed of her right to review the record and advised of her right to file a pro se brief. On May 27, 2014, Tommi Jo filed a pro se brief.

After reviewing the record, counsel's brief, and Tommi Jo's brief, we agree that the appeal is frivolous and without merit. We, therefore, turn to the merits of Gerald's claim.

**B.     Termination as to Gerald**

In making a determination of the best interest of the child, the court considers direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.) (citing *In re S.H.A.*, 728 S.W.2d 73, 86–87 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)).

When the Department removed the children from the home, Gerald's children were only eighteen-months and six-months-old, and both were under three-years-old when the case was called for the termination hearing.  The record is not clear as to whether Gerald ever met his children.  In fact, the children remained in the Department's custody the entire time Tommi Jo was incarcerated, without any contact from Gerald.

We are also cognizant that Gerald, who originally denied paternity, had numerous arrests for driving while intoxicated and a history of family violence with both Tommi Jo and a previous relationship.  Within six weeks of Tommi Jo's release from jail, Gerald was again arrested based on family violence allegations.  The trial court noted the "chaos and turmoil that led to the children being neglected" was no better ten months later.  We conclude there was sufficient evidence to support the trial court's determination that Gerald could not provide a safe home and that the home in Del Rio lacked stability.

Additionally, Gerald did not provide any proof that a single program within his service plans was completed.  Although Gerald testified that he was unable to make contact with the caseworker; the trial court, as the factfinder, is the sole judge of credibility of the witnesses. *See In re J.P.B.*, 180 S.W.3d 570, 573–74 (Tex. 2005) (explaining that witness credibility issues that depend on appearance and demeanor of the witness lie solely within the factfinder's province).  Here, the trial court noted the service plan contained all of the phone numbers, contact information, and services available.  After ten months and six hearings, the trial court found no basis for

extraordinary circumstances to further delay the proceedings; and, further, had Gerald attempted to work with the Department, the situation might be very different.

Considering the entire record "in the light most favorable" to the trial court's findings, we conclude the evidence supports the trial court's determination that termination of Gerald's parental rights was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(2); *In re J.O.A*., 283 S.W.3d at 345; *In re J.F.C*., 96 S.W.3d at 266.

## CONCLUSION

Having reviewed the entire record, we conclude the evidence is legally and factually sufficient for the trial court to form a firm belief or conviction that terminating Tommi Jo and Gerald's parental rights was in the children's best interests.

The judgment of the trial court is affirmed. We further grant Tommi Jo's counsel's motion to withdraw. *Nichols v. State*, 954 S.W.2d 83, 86 (Tex. App.—San Antonio 1997, no pet.); *Bruns v. State*, 924 S.W.2d 176, 177 n.1 (Tex. App.—San Antonio 1996, no pet.).

Patricia O. Alvarez, Justice